# Lauman's Appeal.

1. A debtor to a bank for an over-draft, transferred stock at a fair price " in payment" of the debt " subject to his right of redemption in two years," and was paid by the bank the difference between the stock and his debt. *Held*, that this was a sale of the stock and could not be redeemed after two years.

2. The over-draft was not a loan, but a debt created by the debtor's unauthorized act.

March 6th 1871. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Berks county*: In Equity: No. 390, to January Term 1869.

In this case a bill was filed, December 26th 1867, by George M. Lauman and Josephine F. his wife, in her right, against The Farmers' Bank of Reading and others.

The bill, amongst other things, alleged that Mrs. Lauman was

[Lauman's Appeal.]

the equitable owner of twenty-four shares of the stock of the
Reading Water Company, that George M. Lauman owed the
bank $1656.12, and that for the purpose of securing the bank his
wife agreed that the stock should be transferred to the bank with
the condition that it should be retransferred to her when the
money should be paid, and the transfer was accordingly made
March 17th 1858; that on the 18th of January 1864 Lauman
tendered to the bank $2300, being the full amount of debt and
interest, and demanded a retransfer which was refused.

The prayers were for a transfer of the stock to Mrs. Lauman
on the payment of Lauman's debt, for account of dividends, &c.,
and for further relief.

The bank answered, denying that Mrs. Lauman owned the
stock, averred that there was an absolute sale and transfer of it
to them in payment of Lauman's debt, and denied that there was
any condition that it should be retransferred on the payment of
Lauman's debt and interest; they averred that after deducting
the amount of Lauman's debt, there was a balance of $23.88 due
to him which was paid to him. They admitted the tender, as set
forth in the bill, and refusal because there had been an absolute
sale of the stock to the bank. The evidence was that this stock
had always stood in Lauman's name until the transfer to the bank,
and not in his wife's name.

The other facts material to the case appear in the opinion of
Mr. Justice Read.

The court (Woodward, P. J.) dismissed the bill.

The plaintiffs appealed, and assigned the dismissal of their bill
for error.

*G. F. Baer* and *G. D. Budd*, for appellants.—Lauman's con-
tract was a pledge: Story on Bailments, § 286 *et seq.*; 2 Kent
577. Although the pledge may not be redeemed by the time
limited, yet it retains the character of the pledge still: Wood *v.*
Dudley, 8 Verm. 435; Solomon *v.* Wilson, 1 Whart. 244. By
the common law the pledge if not redeemed by the stipulated
time, did not then become the absolute property of the pledgee,
but he was obliged to have recourse to process of law to sell it,
and until that was done the pledgor could redeem: Cortelyou *v.*
Lansing, 2 Caine's Cas. 200; 2 Kent 581; Story on Bailments,
§ 346. Now the pledgee may sell upon reasonable notice to the
debtor to redeem, and of the time and place of sale, which must
be by public vendue: Diller *v.* Brubaker, 2 P. F. Smith 498;
Sitgreaves *v.* Bank, 13 Wright 364; Conyngham's Appeal, 7 P.
F. Smith 474; Davis *v.* Funk, 3 Wright 243; Story's Eq. Jur.,
§ 1009; Story on Bailments, §§ 318, 345; McAllister's Appeal,
9 P. F. Smith 204. Prescription or the Statute of Limitations
does not run against a pledge: Story on Bailments, § 346; Kemp

*v.* Westbrook, 1 Ves. Sr. 278; Slaymaker *v.* Wilson, 1 Penna. R. 219; Story's Eq. Jur., § 1520.

*F. Leaf Smith* and *H. W. Smith,* for appellees.—Equity follows the analogy of the Statute of Limitations: Todd's Appeal, 12 Harris 429; Waterman *v.* Brown, 7 Casey 161.   In De Lisle *v.* Priestman, 1 Brown 186, the principle is decided that when stock was pledged for a fixed period of time, and a sale made after the time, there could be no recovery.   Equity will not suffer a party to lie by until there is a certainty of profit one way, and without loss any way: Hollingsworth *v.* Fry, 4 Dall. 345; Stoever *v.* Stoever, 9 S. & R. 450.

The opinion of the court was delivered, March 20th 1871, by

Read, J.—George M. Lauman had an account with the Farmers' Bank of Reading, and on the 6th of January 1858 he overdrew his account $1656.12.   The attention of the cashier (Dr. Muhlenberg) was drawn to this overdraft about the middle of March 1858, and he sent word to Major Lauman to come to the bank, and that this thing must be arranged.   He came on the 17th of March 1858 and said he had no ready money, but offered twenty-four shares of water stock in payment of this overdraft. There was about two and a half months' interest then due on the overdraft.

"The last public sales of the stock," says Dr. Muhlenberg, "had brought $68 a share, twenty-four shares at sixty-eight would not pay principal, much less principal and interest, so I offered to allow him $70 a share for it, which would pay the principal and a trifle over.   I said I would make no claim for interest—I would throw that off.   He agreed to that offer of mine, and went out to have the stock transferred to the bank.   That closed the transaction between us.   In about a half an hour or an hour he returned with the certificates in an envelope; he brought his bank-book and asked me to give him credit for $1680, which I did; then he asked me to have his bank-book settled.

"When he returned, the certificates showed that the stock had been transferred to the Farmers' Bank of Reading.   When he asked to have his bank-book settled I told him we could not settle it immediately, but would settle it as soon as we had time.   The book was settled on the 24th of March 1858, and showed a balance in his favor—cash balance of $23.88.   He drew this balance out some time in April 1858.   Lauman's bank account shows a credit given him on March 22d—'shares water stock at $70, $1680'—and that it was settled on March 24th with a balance in his favor of $23.88.

"When Mr. Lauman returned and handed me the certificates and bank-book he sat down and began to talk; he said he still

[Lauman's Appeal.]

held one share of this water stock for the purpose of acting as a director in the company; the water company I mean; and that he parted with this stock with great reluctance. I said to him, If he thought he could raise the money in a reasonable time we would give him a chance to get it back again. He said he thought he could raise the money in the course of a couple of years. I agreed I would hold it for that time, and not sell it to any one else in the mean time. I made a memorandum to that effect on the envelope containing the certificates, as follows: 'March 17th 1858 (158) receipt given for twenty-four shares transferred to cover overdraft for $1656.12, and agree to retransfer on payment of that sum in two years.'

"I gave him a receipt in substance corresponding with this memorandum. The transaction was closed when Lauman went to make the transfer. The subsequent conversation and receipt was an entirely different matter, when he came back and made a long face and complained."

The receipt is in these words:—

"Farmers' Bank of Reading, March 17th 1858, received of George M. Lauman, Esq., a transfer of twenty-four shares of water stock in payment of an overdraft of his account, amounting to $1656.12, subject to his right of redemption within two years.

"H. MUHLENBERG, Cashier."

The bank on the 1st of May 1861 sold and transferred to Charles Kepler, two of these shares of water stock, and on the 22d of December 1863 the remaining twenty-two shares to Isaac Eckert.

On the 18th of January 1864, J. Glancy Jones, Esq., tendered to the bank $2300, in legal tender notes, to redeem these twenty-four shares, which tender was refused.

These are all the material facts necessary for a decision. The position of the plaintiffs is, that the transfer was in fact and in law a security, and that the transaction between the bank and Lauman was a contract of pledge or pawn.

These assertions must mean either that the transfer was a mere conveyance of the title upon condition, or that it was a mere deposit redeemable upon certain terms. Now it is clear it was a payment of the overdraft or debt due the bank, not with money which the debtor had not, but with stock taken at a fixed price, and treated as cash by both parties. It was in fact a sale of the stock to the bank to pay a debt, which it did. It was not a mortgage, and it was not a pledge, pawn or deposit. "The rule," says Judge Agnew, in Spering's Appeal, 10 P. F. Smith 210, "which prevents the conversion of a security for a loan into a sale is intended for the protection of the needy debtor against the

rapacity of a merciless creditor. But this never can be the case where the transaction partakes not of the character of a loan, and the sale is for a fair price." This describes the present case, which never was a loan, but a debt created by the unauthorized act of the debtor, which was paid by the sale to the creditor of the stock at a fair price. Then comes the second part of the transaction which does not affect the sale or the payment, and the language of the receipt given Mr. Lauman could leave no doubt upon the point. It is *in payment* of an overdraft of his account amounting to $1656.12, subject to his right of redemption within two years. "I agreed that I would hold it for that time, and not sell it to any one else in the mean time."

At the end of the two years the bank's power to sell was not hampered by the agreement with Lauman, and it was exercised by them; which action was never questioned until the 18th January 1864, three years and ten months after the expiration of the two years.

It cannot be doubted that the water stock was the absolute property of the bank, and that the plaintiff had not a shadow of a claim to it after the time for redemption had expired.

> Decree affirmed, and appeal dismissed at the costs of the appellants.